**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

DONAVAN CROSS,

           Defendant.

No. CR16-4067-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**DEFENDANT'S RENEWED MOTION**
**FOR JUDGMENT OF AQUITTAL**
**AND MOTION FOR NEW TRIAL**

---

**TABLE OF CONTENTS**

**I.**     **INTRODUCTION AND BACKGROUND** ................................................................ 1
     **A.**    *Factual Background*.................................................................................... 2
     **B.**    *Procedural Background* ............................................................................. 5

**II.**    **LEGAL ANALYSIS** ............................................................................................... 5
     **A.**    ***Motion for Judgment of Acquittal*** ........................................................ 5
          **1.**    *Standards* ..................................................................................... 5
          **2.**    *Analysis* ........................................................................................ 6
     **B.**    ***Motion for New Trial*** ............................................................................. 9
          **1.**    *Standards* ..................................................................................... 9
          **2.**    *Analysis* ...................................................................................... 10

**III.**    **CONCLUSION** .................................................................................................... 11

## I.    *INTRODUCTION AND BACKGROUND*

In resolving Donavan Cross's Renewed Motion for Judgment of Acquittal and Motion for New Trial (docket no. 94), I must "view the evidence in the light most favorable to the guilty verdict, giving the [prosecution] the benefit of all reasonable inferences that

may be drawn from the evidence." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997). Thus, viewed in the light most favorable to the prosecution, the trial evidence established the following facts.

### A. *Factual Background*

On June 4, 2016, Sioux City Police Department (SCPD) officers Paul Yaneff and William Enockson responded to a disturbance call at 3620 Jackson Street, Sioux City, Iowa. The home at that address was the residence of Cross, his girlfriend, Sophia Finauga, and Cross's grandmother, Andrea Cross. However, when the police arrived, only Cross and Finauga were home. Officers Yaneff and Enockson first encountered Finauga as she left the residence. Subsequently, when Cross exited the residence he was completely naked with only a hand towel covering his genitals. Cross told the officers that he had been taking a shower. However, as Officer Yaneff observed, Cross's body and hair were dry, as was his towel.

Officers Yaneff and Enockson asked Cross if he wanted to get dressed before speaking to them. Cross responded by asking the officers about getting his clothing, and then went inside the house with them to retrieve his clothing. Once in the house, Cross led the officers down a hallway, at the end of which were three rooms: Cross's bedroom on the left and his music studio on the right, with a bathroom in the middle. Cross started to get dressed with clothing that was laying in the hallway. As Cross was getting dressed, Officer Yaneff observed Cross try to close his bedroom door with his foot. Once dressed, the officers escorted Cross from the residence.

When they were outside, Officer Yaneff first talked to Cross and then Finauga. While talking with Finauga, Officer Yaneff learned that she planned on moving back in with her mother that day. Finauga's mother lived approximately thirty to forty minutes away. As a result, Finauga told Officer Yaneff that she would like to go back into the residence. Officer Yaneff responded by asking Finauga if he could assist her. Finauga

accepted Yaneff's help and brought Officer Yaneff and Officer Gina Roberts back into the house and to Cross's bedroom. While Finauga was in the room, Officer Yaneff stood at the doorway while Officer Roberts stood behind him.

Cross had a bed in the middle of his bedroom, a dresser to the right of it, a laundry hamper on the left, and a futon near the entryway. The room's closet was full of men's clothing. Finauga grabbed some duffle and makeup bags, and placed them on the futon. She then walked over to the laundry hamper and grabbed a t-shirt. When she did, a Ruger SR9, 9mm pistol with a loaded magazine fell out of the hamper and onto the bedroom floor. Officer Yaneff immediately entered the room and instructed Finauga to back away from the pistol. Finauga told Officer Yaneff that she had never seen the firearm before. Officer Yaneff notified his supervisor, SCPD Sergeant Jacob Hoogendyk, of what had happened to that point and then applied for a search warrant.

Once the search warrant was issued, Officer Yaneff, Officer Enockson, and Sergeant Hoogendyk executed it while SCPD Identification Unit Technician Steve Polak photographed the scene. While inside Cross's bedroom, Polak photographed the firearm and loaded magazine before taking them into his custody. In searching Cross's music studio, officers did not move any bedroom furniture, documents, or mail with Cross's name on them. During the search, the officers found a single round of 9mm ammunition which was consistent with the brand and type of ammunition found inside the loaded magazine. During their search of the bathroom between Cross's bedroom and his music studio, officers found Cross's debit card, a cellphone, and a gun holster. The firearm in Cross's bedroom fit the holster found in the bathroom.

Following the search, Officer Yaneff questioned Cross about the pistol. "Initially, [Cross] said that it was his grandma's gun, and then it continued from there." Trial Tr. at 58. Officer Yaneff then "explained to him that with him being a convicted felon he could not have possession of a firearm." *Id*. at 59. Cross responded that he was not in possession of the pistol because it "wasn't on his exact person." *Id.* Officer Yaneff then explained to

Cross "how possession works, that it can't be anywhere in his bedroom or where he lives to have control of it." *Id.* In response, Cross "immediately denied the left bedroom that had the firearm on it being his." *Id.* Instead, Cross "stated that the right room was his."

On July 22, 2016, in a recorded phone conversation, Cross attempted to convince Finauga to assume responsibility for the pistol and claim that it belonged to her. In this conversation, Cross told her to "look at me and my background and you and your background." Gov. Ex. 5-a. Cross followed up, "you say you love me, you got me, you got me." *Id.* Cross assured her that "nothing's going to happen to you" and then told her that "I'm gonna go away for the fucking rest of my life, dude – are you kidding me?" *Id.* Cross then followed up by asking: "So you got me or what?" *Id.* At the end of the conversation, Cross asked Finauga "it was yours?" and Finauga replied, "yes." *Id.*

At trial, the prosecution presented testimony from Andrea Cross, Cross's grandmother. Andrea Cross testified that the bedroom where the firearm and ammunition were found belonged to Cross. She added that Cross slept in that room and kept his personal belongings there. She also testified that she "wasn't supposed to go" into Cross's bedroom. Trial Tr. at 114-115. Andrea Cross further testified that she did not own a firearm or any ammunition, and had never kept a firearm in her home.

Finally, the prosecution offered testimony that DNA found on the pistol belonged to Cross. University of Nebraska Medical Center DNA Analyst Joseph Choquette testified that Cross was a "major profile contributor." *Id.* at 192. He explained that, after analyzing fifteen different DNA markers, he found that Cross's DNA was a match on all fifteen markers. He concluded that "[t]ypically for being present in all 15 locations within a mixture, it would more likely come from direct contact." *Id.* at 185. Cross's own witness, Dr. Alan Friedman, testified that there is "a very high degree of confidence" that the DNA on the pistol is Cross's. *Id.* at 235. When asked if it was possible that Cross's DNA got onto the firearm by direct contact, Dr. Friedman stated that direct contact could "absolutely" explain how Cross's DNA got onto the pistol. *Id.* at 236.

### B. Procedural Background

In an Indictment returned on August 24, 2016, Cross was charged with possession of a firearm and ammunition as a prohibited person, in violation of 18 U.S.C. § 922(g)(1), 922(g)(3) and 924(a)(2).  Trial commenced on December 14, 2016.  On December 15, 2016, at the close of the prosecution's evidence, Cross moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which I denied.  On December 15, 2016, the jury returned a verdict in which it found Cross guilty of the charged offense.  On December 28, 2016, Cross requested, and I granted, an extension of time to file his post-trial motions until after the trial transcript was completed.  On January 20, 2017, Cross filed a Renewed Motion for Judgment of Acquittal and Motion for New Trial.  Cross argues that the jury's verdict was against the weight of the evidence.  The prosecution filed its response on January 27, 2017.  Cross did not file a reply.

### II. LEGAL ANALYSIS
### A. Motion for Judgment of Acquittal
### 1. Standards

Federal Rule of Criminal Procedure 29 governs Cross's motion for judgment of acquittal.  Rule 29(a) provides:  "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  FED. R. CRIM. P. 29(a).  When the defendant moves for judgment of acquittal after the prosecution rests,

> [t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

FED. R. CRIM. P. 29(b).  If the jury returns a guilty verdict, the defendant may renew a motion for a judgment of acquittal "within 14 days after a guilty verdict or after the court

discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). "If the court reserve[d] decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." FED. R. CRIM. P. 29(b). Here, Cross has renewed his motion for judgment of acquittal. Thus, I may consider the entire trial record in deciding whether to grant Cross's motion. A judgment of acquittal is only appropriate if "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). "The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned." *United States v. Jiminez-Perez*, 238 F.3d 970, 972-73 (8th Cir. 2001) (citing *United States v. Ryan*, 227 F.3d 1058, 1063 (8th Cir. 2000)); *see United States v. Peneaux*, 532 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). "Sufficient evidence exists to support a verdict if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jiminez-Perez*, 238 F.3d at 972 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, I may grant a judgment of acquittal "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011) (quoting *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006)) (internal quotation marks omitted). As I noted, above, I must "'view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence.'" *Id.* (quoting *United States v. Milk*, 447 F.3d 593, 598 (8th Cir. 2006)).

### 2. *Analysis*

In order to convict Cross under § 922(g)(1), the prosecution was required to prove beyond a reasonable doubt the following elements: (1) defendant was prohibited by law from possessing a firearm or ammunition; (2) defendant knowingly possessed the firearm or ammunition; and (3) the firearm and ammunition had been in or affected interstate commerce. *United States v. McDonald*, 826 F.3d 1066, 1072 (8th Cir. 2016) (citing *United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015)).

The parties' stipulation, that Cross was prohibited from possessing a firearm because he had previously been convicted of at least one felony crime and was an unlawful user of an illegal drug at the time of the offense, established the first element. In addition, the prosecution proved beyond a reasonable doubt that the firearm and all of the ammunition were manufactured outside the state of Iowa and traveled in interstate commerce. Cross does not contend otherwise. As a result, Cross challenges only the sufficiency of the evidence on the possession element.

To establish this element, the prosecution had to prove that Cross had either actual or constructive possession of the firearm. *McDonald*, 826 F.3d at 1072; *United States v. Garrett*, 648 F.3d 618, 622 (8th Cir. 2011). "Constructive possession requires that the defendant 'has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" *McDonald*, 826 F.3d at 1072 (quoting *United States v. Evans*, 431 F.3d 342, 345 (8th Cir. 2005) (quoting in turn *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004) (internal quotation marks omitted)); *see United States v. Cox*, 627 F.3d 1083, 1085 (8th Cir. 2010). Constructive possession may be established by circumstantial evidence, alone, but the prosecution must show a sufficient nexus between the defendant and the firearm. *See McDonald*, 826 F.3d at 1072. Moreover, Cross did not have to be in exclusive possession of the firearm; joint possession is sufficient. *See United States v. Johnson*, 474 F.3d 1044, 1049 (8th Cir. 2007) (citing *Ortega v. United States*, 270 F.3d 540, 545 (8th Cir. 2001)).

I find that the evidence introduced at trial was sufficient to permit the jury to find that Cross possessed the firearm.[1] After finding the pistol in Cross's bedroom, Cross claimed that the bedroom was not his. Yet, the jury could easily have found that the room

_____

[1] At trial, in denying Cross's motion for judgment of acquittal, I specifically found that "there is sufficient evidence upon which a reasonable juror could but would not be required to find the United States proved its case beyond a reasonable doubt." Trial Tr. at 268. Cross has not directed me to any evidence that would cause me to question my decision at trial.

was Cross's bedroom. Andrea Cross, Cross's grandmother, confirmed that the bedroom was Cross's. Andrea Cross testified that Cross slept in the room and kept his clothing and mail in the room. Most telling was the fact that Andrea Cross testified that Cross forbade her from entering the room. Moreover, in a clear attempt to distance himself from the room where the pistol was found, Cross claimed that the music studio room was his bedroom. Yet, the police found a single 9 mm round in the music studio room. This ammo was the same type and brand as some of the ammunition found in the loaded magazine. In addition, the jury could doubt Cross's veracity based on his repeated lies to the police. Also, approximately a month after the police seized the pistol and ammunition, Cross tried to convince Finauga to falsely claim the pistol was hers. As he explained to her, "look at me and my background and you and your background." Gov. Ex. 5-a. He followed up by telling her that "nothing's going to happen to you" but that "I'm gonna go away for the fucking rest of my life, dude – are you kidding me?" *Id.* Cross further sought to convince Finauga to claim ownership of the pistol by reassuring her that she would only receive probation because she had no felonies or active arrest warrants. *Id.*

Along with the strong circumstantial evidence, Cross's DNA was found on the pistol. Choquette testified that Cross was a "major profile contributor," who matched all fifteen DNA markers. Choquette explained that this was significant because it meant that Cross's DNA on the pistol was likely to have been the result of Cross's direct contact with the pistol. Even Cross's own expert, Dr. Friedman, conceded that direct contact could "absolutely" explain how Cross's DNA got onto pistol.[2]  Trial Tr. at 236.

---

[2] Cross contends that the verdict should be set aside because the police failed to obtain DNA from other individuals. The fact that other individuals possibly came into contact with the pistol is not exculpatory since the prosecution was not required to prove that Cross had exclusive possession of the pistol. Cross's joint or constructive possession of the pistol is sufficient to sustain his conviction. *See United States v. McCraney,* 612 F.3d 1057, 1067 (8th Cir. 2010); *United States v. Maxwell*, 363 F.3d 815, 817 (8th Cir. 2004).

Here, based on the evidence discussed above, a reasonable jury could find that Cross knowingly possessed the pistol and ammunition. *See, e.g., United States* v. *Boykin*, 986 F.2d 270, 274 (8th Cir. 1993) (holding there was sufficient evidence to support § 922(g)(1) conviction, where firearms were seized in the defendant's master bedroom which he shared with his wife). Accordingly, Cross's Motion for Judgment of Acquittal is denied.

## B. Motion for New Trial

### 1. Standards

Federal Rule of Criminal Procedure 33 governs Cross's motion for new trial. Rule 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). I have broad discretion in considering a motion for new trial. *See United States v. Garcia*, 569 F.3d 885, 889 ((8th Cir. 2009); *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). I may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (internal quotation marks omitted); *see Garcia*, 569 F.3d at 889; *United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008). However, district courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). A district court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)). As the Eighth Circuit Court of Appeals has explained:

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most

> favorable to the verdict; it may weigh the evidence and in so
> doing evaluate for itself the credibility of the witnesses. If the
> court concludes that, despite the abstract sufficiency of the
> evidence to sustain the verdict, the evidence preponderates
> sufficiently heavily against the verdict that a serious
> miscarriage of justice may have occurred, it may set aside the
> verdict, grant a new trial, and submit the issues for
> determination by another jury.

*United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *see United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007) (repeating applicable standard of review).

### 2.    *Analysis*

Cross, alternatively, argues that I should grant him a new trial. Cross contends that the verdict is contrary to the weight of the evidence. Specifically, Cross argues that I erred when I denied his request to exclude the recorded phone conversations between himself and Finauga, Government Exhibits 5-a and 5-b. I rejected Cross's objection on Federal Rule of Evidence 403 grounds. As I explained prior to trial, the phone conversation between Cross and Finauga was admissible because the recordings were "more probative than prejudicial, so it comes in. It's a no brainer." Pretrial Hearing Tr. at 8. Cross argues that the probative value of the recordings were "minimal" because Cross made no admissions concerning either the pistol or the ammunition in them. Cross further argues that he was unduly prejudiced by the admission because, although the recordings did not expressly mention that Cross was in jail, the jury likely inferred that the recordings were made while he was jailed. I disagree. First, Cross only makes bald assertions that the probative value of the recordings was substantially outweighed by their prejudicial effect. However, none of the prosecution's witnesses or exhibits, including the recordings themselves, directly mention or even allude to Cross's incarceration. Second, as I mentioned prior to trial, the recordings are "probative of possession," an element of the offense, because they reveal Cross's attempt to cajole Finauga into assuming responsibility for the pistol. *Id.* at 4. Accordingly, I conclude that the probative value of the recordings

was not substantially outweighed by the danger of unfair prejudice, and Cross's Motion for New Trial is also denied.

## III.    CONCLUSION

For the reasons discussed, above, Cross's Renewed Motion for Judgment of Acquittal and New Trial is denied.

**IT IS SO ORDERED**.

**DATED** this 9th day of February, 2017.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA